UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA RUIZ,<br>    Plaintiff<br>v.<br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br>    Defendant. | Case No. 5:17-cv-01596-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Maria Ruiz ("Plaintiff") filed a complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11, 12] and briefs addressing disputed issues in the case [Dkt. 17 ("Pltf.'s Br.") & Dkt. 20 ("Def.'s Br.")]. The Court has taken the parties' briefing under submission without oral argument. For the reasons set forth below, the Court affirms the decision of the ALJ and orders judgment entered accordingly.

---

[1] Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration, is substituted as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

**II. ADMINISTRATIVE DECISION UNDER REVIEW**

On March 5, 2013, Plaintiff filed an application for DIB, alleging that she became disabled as of September 28, 2009. [Dkt. 16, Administrative Record ("AR") 23, 176-177.] The Commissioner denied her initial claim for benefits and then denied her claim upon reconsideration. [AR 23; 67-81; 83-99.] On January 5, 2016, a hearing was held before Administrative Law Judge ("ALJ") Joseph P. Lisiecki III. [AR 42-66.] On March 22, 2016, the ALJ issued a decision denying Plaintiff's request for benefits. [AR 20-41.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 404.1520(b)-(g)(1). At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since September 28, 2009, the alleged onset date, through December 31, 2013, the date last insured. [AR 25.] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: fibromyalgia, obesity, carpal tunnel diagnosis, thyroid tumor removed and on replacement therapy, left kidney removal in 2010, osteoarthritis of the right knee with torn meniscus (no follow-up treatment), lumbar spine degenerative disc disease, and depression. [*Id.* (citing 20 C.F.R. § 404.1520(c)).] Next, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 26 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526)]

The ALJ found that Plaintiff had the following residual functional capacity (RFC):

> [S]edentary work as defined in 20 CFR 404.1567(a) as follows: can occasionally lift and carry 10 pounds, frequently lift and carry less than 10 pounds; stand and walk with normal breaks for a total of 2 hours in an 8-hour day; sit with normal breaks for a total of 6 hours of an 8-hour day; gross and fine manipulation limited to frequent, bilaterally; postural limitations are all occasional; no climbing ladders, ropes, or scaffolds; no dangerous

>     moving machinery or unprotected heights; and limited to
>     simple, repetitive tasks.

[AR 27-28.] Applying this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work, but determined that based on her age (41 years old on the date last insured) and high school education, and ability to communicate in English, she could perform representative occupations such as table worker (DOT 739.687-182) and document preparer (DOT 249.587-018), and, thus, is not disabled. [AR 35-36.] Plaintiff sought review from the Appeals Council, which denied review on June 15, 2017. [AR 1-7.]

## III.  GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

## IV.  DISCUSSION

Plaintiff contends that the ALJ erred by failing to articulate valid reasons for assigning little weight to the opinion of Plaintiff's treating physician, Dr. Anita Lenz, M.D. [Pltf.'s Br. at 4-12.]

In general, a treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must provide clear and convincing reasons supported by substantial evidence to reject the uncontradicted opinion of a treating or examining physician. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)

3

(citing *Lester*, 81 F.3d at 830-31). If a treating or examining doctor's opinion is contradicted by another medical opinion, an ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216. "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (internal quotation marks and citation omitted).

Dr. Lenz treated Plaintiff since November 2009. [AR 624.] In November 2013, Dr. Lenz reported Plaintiff's prognosis as "guarded" due to fatigue, pain, and other symptoms that would likely persist over twelve months and possibly a lifetime. [AR 30, 736.] On June 20, 2014, Dr. Lenz completed a physical residual capacity questionnaire in which she diagnosed Plaintiff with left kidney cancer (removed kidney in 2009), thyroid cancer in 2013, chronic back pain with muscle spasms, radiculopathy, hypothyroid surgery in 2006, hypertension, depression/anxiety, urinary tract infections, and thick uterus lining. [*Id.*] Dr. Lenz noted the following symptoms: body pain, vertigo, lightheadedness, fatigue, frequent urinary tract infections, depression/anxiety, confusion, difficulty concentrating, insomnia, and muscle spasms. [AR 1157.] She assessed Plaintiff's residual functional capacity stating that Plaintiff can: sit or stand five minutes continuously; sit less than 2 hours total in an 8-hour workday with normal breaks; stand/walk less than 2 hours total in an 8-hour workday with normal breaks; never lift and carry less than 10 pounds [sic]; and cannot use hands/fingers/arms for repetitive reaching or gross and fine manipulation. [AR 30; 1159-1161.] Dr. Lenz also found that Plaintiff impairments would "produce all bad days" and that Plaintiff

4

has a severe limitation in her ability to handle work stress. [AR 30; 1158, 1161.]

Several other medical source opinions contradict Dr. Lenz's June 2014 conclusions. For instance, consultative examining physician Dr. Gabriel Fabella performed an evaluation of Plaintiff in August 2013. Dr. Fabella diagnosed Plaintiff with thyroid carcinoma under treatment, lumbar spine herniated disc with right-sided radiculopathy, left tennis elbow, incisional hernia, history of nephrolithiasis, hypertension controlled, musculoskeletal chest pain, and positive purified protein derivative (PPD) test, but also concluded that Plaintiff could "lift or carry 20 pounds occasionally and 10 pounds frequently; stand or walk for 6 hours in an 8-hour day with normal breaks; sit without limitations; and occasionally bend and stoop." [AR 30; 510.] In addition, the state agency medical consultants and testifying medical expert, Dr. John Morse, found similar severe limitations, but also concluded that Plaintiff could perform the equivalent of "light work." [AR 30-31; 48; 77-79; 95-96.] Thus, the Court looks to see whether the ALJ provided specific and legitimate reasons to treat Dr. Lenz's opinion as he did.

Having reviewed the entirety of the record, the Court agrees with the ALJ's assessment of Dr. Lenz's opinion laid out in the June 2014 assessment.

First, the ALJ found Dr. Lenz's opinion regarding Plaintiff's work-related limitations to be unsupported and inconsistent with the medical record. [AR 30.] The ALJ met his burden here with a detailed review of the medical evidence [AR 28-34], which included, in shortened form and without limitation, the following:

1. Dr. Lenz first began treating Plaintiff in November 2009 "for left flank pain secondary to left kidney stone and recurrent urinary tract infections." [AR 28, 624.]
2. Plaintiff went to the emergency room and underwent left nephrostomy tube placement. [AR 28, 626]
3. In May 2010, an abdominal CT revealed a three-centimeter staghorn calculus in the left kidney [AR 28, 630]. Plaintiff underwent left

nephrectomy for the staghorn calculus, which was determined to be stage 1 renal carcinoma in December 2010. [AR 680] Renal CT scan was negative for any recurrence of cancer in November 2013.

4. Plaintiff underwent a gall bladder removal in 2011 for chronic cholecystitis and cholesithiasis and abdominal hernia repair. [AR 944.]

5. Plaintiff complained of chronic pain in the low back and right leg, but lumbar spine x-rays were normal. [AR 29, AR 951.] Plaintiff was diagnosed with L5-S1 herniated disc and lumbar spondylosis in October 2011 for which she was treated with epidural injections and physical therapy, with some relief. [AR 29.]

6. In January 2013, Plaintiff complained of left elbow pain and was diagnosed with lateral epicondylitis and treated with injections and an elbow brace. She was evaluated for diffuse joint and muscle pain in February 2013 and treated with medications, with some relief. [*Id.*]

7. In September 2012, right knee x-rays showed minimal medial compartment narrowing. [AR 464.] In February 2013, a MRI of the right knee revealed cartilage loss along the lateral patellar facet and mild partial thickness cartilage loss along the lateral formal trochlea. [AR 753.]

8. In April 2013, left hand radiographs were normal, and chest x-rays revealed mild dextroscoliosis but were otherwise normal. [AR 751-752.] In November 2013, radiographs of the right shoulder revealed no acute disease with mild downward sloping acromion. [AR 745.] Right elbow, wrist, and humorous were all normal. [AR 746-748.]

9. Plaintiff reported a history of right-sided thyroid masses and previous diagnosis of benign lesions. [AR 29, citing AR 416-431, 516-539, 563, 607, 612, 749, 1050-1077, 1090, 1095.]

After summarizing the medical evidence, the ALJ concluded that Plaintiff's "[p]hysical examinations revealed few remarkable findings." [AR 33.] Specifically, Plaintiff's "[l]umbar spine MRI did show some arthritic changes, but cervical spine MRI was nonspecific" and her "[b]ilateral lower extremity nerve conduction study was normal." [AR 33.] In addition, the record revealed no evidence of recurrence of cancer or serious complications after Plaintiff underwent a thyroidectomy and a nephrectomy. [AR 28-30; 47, 1010.]

Plaintiff contends that the objective medical evidence does support Dr. Lenz's opinion because Plaintiff was referred to Dr. Gurvindal S. Uppal, M.D., who "opined that based on [Plaintiff's] physical examination and MRI, a posterior decompression and fusion, L5-S1 surgery was the *best* treatment." [Pltf.'s Br. at 7 (emphasis added).] This is incorrect. Dr. Uppal's notes indicate that he "discussed the options of no treatment, more nonoperative treatment and surgery" and Plaintiff "wishe[d] to go home and think about it…[s]he w[ould] let [him] know if she wishe[d] to proceed with the surgery." [AR 453.] There is no indication that Dr. Uppal thought surgery was the "best treatment." Moreover, Plaintiff's testimony and the medical record indicate that Plaintiff elected not to have back surgery. [AR 51, 453, 460-462.] In fact, even more than a year after Plaintiff's consultation with Dr. Uppal, Plaintiff still "want[ed] to see if she can avoid surgery at all costs." [AR 475.] Plaintiff also argues that the December 3, 2012 treatment note from orthopedic surgeon, Neil Halbridge, M.D., supports her complaints about her right knee because Dr. Halbridge assessed a positive McMurry test, positive Alpley test, positive patellofemoral crepitation test, and positive patellofemoral compression test. [Pltf.'s Br. at 8; AR 465.] These tests indicate problems with the Plaintiff's torn meniscus, which the ALJ found to be a severe impairment. [*See* AR 25.] However, Dr. Halbridge also noted that Plaintiff "is in no acute distress" with "[m]otor exam intact 5/5 bilateral extremities" and normal knee range of motion. [AR 465-466.] Thus, having reviewed the entirety of the record, the Court agrees

7

that Dr. Lenz's opinion regarding Plaintiff's severe sitting, standing, walking, lifting, and fingering limitations are unsupported by the medical record and this was a specific and legitimate reason for assigning Dr. Lenz's opinion limited value.

Second, the ALJ found that Dr. Lenz's opinion was inconsistent with Plaintiff's daily activities. [AR at 30.] The ALJ was entitled to assign less weight to Dr. Lenz's opinion to the extent it imposed highly restrictive limitations that were inconsistent with Plaintiff's daily activities. *See Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001) (ALJ's finding that doctor's "restrictions appear to be inconsistent with the level of activity that [plaintiff] engaged in by maintaining a household and raising two young children, with no significant assistance from her ex husband," was a specific and legitimate reason for discounting opinion); *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601–02 (9th Cir. 1999) (ALJ permissibly rejected treating physician's opinion when it conflicted with plaintiff's activities); *see also Fisher v. Astrue,* 429 Fed. Appx. 649, 652 (9th Cir. 2011) (conflict between doctor's opinion and claimant's daily activities was specific and legitimate reason to discount opinion).

Plaintiff argues that "permitting two hours of standing and walking, three hours of sitting, and lifting and carrying up to 20 pounds is not inconsistent with claimant [sic] testimony of walking 30 minutes at a time or grocery shopping for an hour and ½ once per week." [Pltf.'s Br. at 11.] First, the Court notes that Plaintiff references a **twenty-pound** lifting restriction established by Dr. Lenz, but the Court can find no support for this opinion in the medical evidence. Dr. Lenz opined that Plaintiff "can never lift and carry less than 10 pounds." [AR 1160.] It is unclear what Dr. Lenz intended with this limitation. The Court assumes that this was a typographical error and that Dr. Lenz intended to write that Plaintiff is unable to lift **more** than ten pounds (not less). Plaintiff also references a three-hour sitting limitation, but Dr. Lenz opined that Plaintiff could sit **less than two hours** in an eight-hour workday and only five minutes continuously. [AR 1159.]

8

With regard to Plaintiff's daily activities, Plaintiff testified that she could sit for **thirty minutes** at a time, which is inconsistent with Dr. Lenz's opinion that Plaintiff could only sit for **five minutes** continuously. [AR 33, 1157-1160.] Plaintiff also stated that she was able to prepare meals, perform some light household chores, care for her four-year old son, and shop in stores, which is inconsistent with Dr. Lenz's opinion that Plaintiff could not use her hands for gross or fine manipulation and could only sit or stand for five minutes continuously. [AR 26, 32, 54-55, 204-206, 231-233, 267-268.] Thus, the Court finds that Dr. Lenz's opinion regarding Plaintiff's severe limitations are inconsistent with Plaintiff's daily activities and this was a second specific and legitimate reason for assigning Dr. Lenz's opinion limited value.

Lastly, the ALJ noted that Dr. Lenz opined that Plaintiff's limitations began in 2008, but the medical record established that Dr. Lenz did not treat Plaintiff in 2008. Plaintiff admits this inconsistency, but states that "[t]he ALJ overemphasized the onset date of 2008." [Pltf.'s Br. at 11.] However, the Court finds that a statement about a disability onset date without accompanying medical evidence of treatment until a year after the alleged onset date is a proper consideration that supports the ALJ's weight determination.

Accordingly, the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence in the record to find that Dr. Lenz's assessment is entitled to limited weight. Although Plaintiff disagrees with the ALJ's conclusion, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). This issue, therefore, does not warrant remand.

///

9

# V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: June 27, 2018

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE